UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION


FILED
OCT 21 2016
[signature]
CLERK

| | |
|---|---|
| PATRICK BROWN THUNDER,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | 3:15-CV-03016-RAL<br><br>OPINION AND ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 |

Following a jury trial from December 3 through December 7, 2012, Petitioner Patrick Brown Thunder (Brown Thunder) was found guilty of one count of sexual abuse of a minor whose initials are A.C., and one count of sexual abuse of a person incapable of consenting who likewise was a minor with initials H.C. United States v. Brown Thunder, 11-CR-30113-RAL, CR Doc. 218.[1]  Brown Thunder was found not guilty of two crimes related to the events involving H.C. CR Doc. 218. This Court sentenced Brown Thunder to 180 months in custody plus three years on supervised release for the sexual abuse of A.C., and to 240 months in custody plus five years of supervised release for the sex crime against H.C. CR Doc. 234. Both the custody and supervised release time were to be served concurrently. CR Doc. 234.

Brown Thunder at trial and on appeal was represented by attorney Dana Hanna. Brown Thunder appealed to the United States Court of Appeals for the Eighth Circuit, which affirmed Brown Thunder's conviction on March 12, 2014. CR Doc. 267. Brown Thunder filed a petition

---

[1] Citations to pleadings from Brown Thunder's criminal case will be "CR Doc." followed by the document number in the CM/ECF system.

1

for rehearing en banc, which was denied on August 12, 2014. CR Doc. 271. Brown Thunder's one year statute of limitations under 28 U.S.C. § 2255 began to run after his time to file a petition for writ of certiorari passed, which was 90 days after August 12, 2014, under Rule 13 of the Rules of the Supreme Court of the United States. See Clay v. United States, 537 U.S. 522, 524 (2003).

On September 8, 2015, Brown Thunder timely filed his Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (§ 2255 Petition) in this case. CIV Doc. 1.[2] Brown Thunder raised five grounds in his § 2255 Petition, all of which assert ineffective assistance of counsel claims. CIV Doc. 1. This Court screened the § 2255 Petition and ordered the Government to respond. CIV Doc. 7. The Government sought and obtained an order directing defense counsel Hanna to respond, and Brown Thunder executed an Attorney-Client Privilege Waiver so that Hanna could provide information relevant to Brown Thunder's claims. CIV Docs. 9, 11, 13. After Hanna's affidavit, CIV Doc. 18, was filed, the Government filed a Motion to Dismiss and supporting memorandum, CIV Docs. 28, 29. Brown Thunder then filed his reply. CIV Doc. 32. For the reasons explained herein, this Court denies Brown Thunder's § 2255 Petition and grants the Government's Motion to Dismiss.

## I.  Facts From the Underlying Case[3]

The Superseding Indictment charged Brown Thunder with four crimes. Count I charged Brown Thunder with sexual abuse of minor A.C. by having penal-vulva contact between April 23, 2005, and April 22, 2006, at a time when A.C. was younger than 16 and Brown Thunder was

---

[2] Citations to pleadings filed in this case will be "CIV Doc" followed by the document number in the CM/ECF system.

[3] This Court cites to parts of the trial record in discussing Brown Thunder's particular claims, but dispenses with cites in this section. The transcript of the jury trial, CR Doc. 239, supports this factual summary.

more than four years older than A.C. CR Doc. 110. Counts II, III, and IV of the Superseding Indictment charged Brown Thunder with crimes committed against H.C. on or about March 28 and 29, 2008. CR Doc. 110. Count II charged Brown Thunder with penal-vulva contact with H.C., and Count III charged Brown Thunder with penetration of H.C.'s vulva with a hand, finger, or object; both counts alleged that H.C. was incapable of appraising the nature of the conduct and physically incapable of declining participation in the sexual act. CR Doc. 110. Count IV alleged that Brown Thunder had kidnapped H.C. for purposes of engaging in sexual abuse of her. CR Doc. 110. Brown Thunder pleaded not guilty and went to trial in December of 2012.

Although Brown Thunder's sexual abuse of minor A.C. occurred in 2005 or 2006, that event became known to law enforcement only in connection with investigating the sexual assault on H.C. in late March of 2008. Accordingly, it makes sense to recount the evidence of the events of March 28 and 29, 2008 first.

In March of 2008, A.C. was 15, H.C. was 13, and their friend T.C. was 12; all three lived in the small town of Dupree, South Dakota, on the Cheyenne River Indian Reservation. In the early evening of March 28, 2008, A.C. and H.C.'s mothers were gone to Eagle Butte, which is about 17 miles away from Dupree. A.C., H.C., and T.C. pooled their money and managed to obtain a bottle of Black Velvet whiskey. They drank together at A.C.'s home, with H.C. becoming very intoxicated, A.C. somewhat intoxicated, and T.C. remaining mostly sober as she was babysitting a small child.

Brown Thunder in March of 2008 was 26 years old. Brown Thunder had met A.C. through his little sister and as described below had sexual intercourse with A.C. when she was 13 in his car in 2005 or 2006. Brown Thunder called A.C. on the evening of March 28, 2008, to see

3

if she wanted to drive around with him; she did not, but mentioned that she was at her house drinking. Brown Thunder, who was living in Eagle Butte at the time but had family in Dupree, showed up at A.C.'s home in Dupree a short time later and drank a mixed alcoholic beverage with A.C., H.C., and T.C. in A.C.'s kitchen. A.C. expected her mother to be home around 9 p.m. As that time approached, H.C. was very drunk to the point of being unable to walk on her own. A.C. and T.C. helped H.C. out of the house, and A.C. helped H.C. into the front passenger seat of Brown Thunder's silver Lincoln sedan. A.C. returned to her house, expecting Brown Thunder to wait for her. T.C. saw Brown Thunder drive off rapidly, and by the time A.C. went back outside, Brown Thunder, his car, and H.C. were gone.

H.C.'s mother Fawn H.B.[4] (Fawn) returned to Dupree from playing bingo in Eagle Butte around 10 p.m. Finding her thirteen-year-old daughter H.C. to be missing, Fawn asked around and learned that H.C. had been at A.C.'s home. Fawn phoned for A.C. and ended up talking to T.C., who lied by saying she last saw H.C. walk away from A.C.'s home. T.C. at trial admitted this was a lie and that she last saw H.C. as she was being walked to Brown Thunder's car. T.C. let A.C. know that Fawn was looking for H.C. A.C., who was concerned about H.C.'s safety with Brown Thunder, called Fawn to correct T.C.'s fib and to tell Fawn that H.C. was with Brown Thunder.

Fawn knew where Brown Thunder's mother lived in Dupree and drove to that house. Fawn saw Brown Thunder's silver Lincoln sedan there and parked right behind it. Fawn went to the driver's side, saw Brown Thunder in the driver's seat, knocked on the window, and tried to pull the door open. Fawn could see her daughter reclined on the passenger seat which was laid

---

[4] In an effort to further protect the identities of the two girls who were victims of the crime, this Court refers to H.C.'s mother and subsequently to H.C.'s aunt by their first names and last initials.

4

back. Fawn demanded that Brown Thunder open the door, but Brown Thunder refused saying "that's not your daughter." Fawn responded, "Yes, it is." Brown Thunder, unable to back up to leave, then drove forward across the lawn very fast towards another road. Fawn tried to follow but lost Brown Thunder's car, so she then called the police.

Over the next several hours, various people looked in vain for H.C. A.C. told Fawn that Brown Thunder and H.C. might be on a rural road outside of Dupree, but Fawn was low on gas and did not explore the rural road, which was outside of town near a trailer court.

At 11:38 p.m., Brown Thunder called Cheyenne River Sioux Tribe's dispatch center asking if people had called in on him. He told the dispatcher that he was not with that girl and that he was going to Dupree to talk with the girl's mother.

Around 2 a.m., Alyssa Knight, who lived on the edge of a trailer park, answered a knock on her door and encountered H.C. with blood on her shirt and pants. Knight knew H.C.'s aunt, Jennifer B.W. whom Knight called and who came immediately. Jennifer B.W. called H.C.'s mother. H.C. at the time was disheveled, very cold, had blood on her clothing, and had only one shoe. Fawn took H.C. to the emergency room in Eagle Butte and then to the hospital in Pierre. H.C. had scrapes to her face and chest, and bruised knees, with blood on her pants, panties, and shirt. The treating physician, Dr. Jamie Liudahl, found H.C. to have sustained a two centimeter laceration of her vaginal wall, which took three stitches to close. That injury resulted from something being inserted into H.C.'s vagina, but Dr. Liudahl could not say if it was a hand, finger, object, or penis. Testing of material collected in the rape kit detected no semen.

H.C.'s level of intoxication on March 28 and 29, 2008 impaired her memory. H.C. recalled being in A.C.'s kitchen drinking whiskey and then next recalls walking in the trailer court. Brown Thunder consented to being interviewed on two occasions. Initially, Brown

5

Thunder said that he saw nothing, was not in Dupree at all, and that the girls did not see anything either. During a second interview, Brown Thunder again denied being in Dupree, denied seeing Fawn at his car that night, and further denied even knowing A.C.

A.C. disclosed to a Federal Bureau of Investigation (FBI) agent investigating what happened to H.C. that Brown Thunder had sexual intercourse with A.C. in his car when A.C. was 13. The FBI agent had A.C. take him to the locations where Brown Thunder had parked his car to have intercourse or smoke marijuana with A.C. At one of the locations, the trailer park near Alyssa Knight's home, the agent found H.C.'s missing shoe.

A.C. said during trial that she met Brown Thunder through Brown Thunder's little sister. A.C. testified that when she was 13, she and Brown Thunder got together a couple of times. Brown Thunder supplied her with marijuana, which they smoked together. Brown Thunder parked his vehicle outside of Dupree, and they had penal-vaginal intercourse in the back seat of the car. When A.C. was 13, Brown Thunder would have been 23 or 24.

The FBI's investigation stalled at various times as agents cycled through the Pierre field office. When FBI agent Michelle Lakey inherited the file, she obtained a search warrant for Brown Thunder's sedan to take portions of the passenger seat for testing. Blood stains on the passenger seat of Brown Thunder's sedan matched H.C.'s blood.

At trial, Brown Thunder suggested that H.C.'s vaginal laceration could be from a fall or straddle type injury, rather than caused by a sexual assault. Medical evidence established that the laceration was from some penetration of H.C.'s vagina, however. Brown Thunder also suggested that H.C.'s blood came from a bloody nose, but medical professionals testified that there was no evidence of H.C. having a bloody nose that night. The location of the blood on her

pants and panties and in turn on the passenger seat of Brown Thunder's car likewise belied the theory that a bloody nose was the source of H.C.'s blood found in Brown Thunder's car.

Brown Thunder took the stand during his trial and completely changed his story from what he had told FBI agents during the two prior interviews. Brown Thunder at trial admitted that he drove his silver Lincoln sedan to Dupree to A.C.'s home and then drank alcohol briefly with A.C., H.C., and T.C. Brown Thunder testified that H.C. was very drunk and was kissing him and holding onto him. Brown Thunder sought to explain away H.C.'s blood in his car by saying that A.C. walked H.C. to the car and slammed the door in H.C.'s face causing her to have a bloody nose. Brown Thunder said that he gave H.C. a ride to her mom's house, which was essentially across the street, and dropped H.C. off, but H.C. went off walking on her own. Brown Thunder embellished his story by saying that he later saw H.C. talking with a young man whom Brown Thunder knew and who had passed away before trial. Brown Thunder also said that he loaned his car to another individual for a while that night. Brown Thunder acknowledged at trial that H.C.'s mother Fawn was at his car door later, but claimed that Fawn had mistaken his parka on the passenger seat for her daughter. Brown Thunder denied having sex with A.C. or H.C. at any time.

The jury obviously did not believe Brown Thunder's testimony, finding him guilty of sexual abuse of minor A.C. and of the count alleging sexual penetration by hand, finger, or object of H.C.'s vulva when she was incapacitated. Brown Thunder filed a Motion for Judgment of Acquittal and New Trial, which this Court denied. CR Docs. 228, 229. Brown Thunder unsuccessfully argued on appeal that there was an error in the instructions, that the evidence was insufficient to support his convictions, and that there was error in evidentiary rulings. The Eighth Circuit affirmed Brown Thunder's conviction. CR Doc. 267.

## II. Discussion

### A. Evidentiary Hearing

An evidentiary hearing is not needed to address Brown Thunder's contentions. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'" Holder v. United States, 721 F.3d 979, 993 (8th Cir. 2013) (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (alteration in original)). Further, "[n]o hearing is required where the claim 'is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) (quoting Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994)). Because the record convincingly refutes Brown Thunder's assertions and shows conclusively that he is not entitled to relief, an evidentiary hearing is not necessary. See United States v. Big Eagle, No. CIV 13-3015-RAL, 2014 WL 234735, at *8 (D.S.D. Jan. 22, 2014).

### B. Brown Thunder's Claims

Brown Thunder's arguments for relief assert ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel to defendants in criminal prosecutions. U.S. Const. amend. VI; see also Gideon v. Wainwright, 372 U.S. 335 (1963); Johnson v. Zerbst, 304 U.S. 458 (1938); Powell v. Alabama, 287 U.S. 45 (1932). A defendant who claims to have been deprived of effective assistance of counsel must show: (1) that his lawyer's representation fell below an objective standard of reasonableness; and (2) that the lawyer's deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984); Nupdal v. United States, 666 F.3d 1074, 1075 (8th Cir. 2012) (citing Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000)).

For the first requirement of the Strickland test, "the court must apply an objective standard and 'determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance,' Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions." Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995). To establish prejudice to satisfy the second prong of the Strickland test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Because hindsight analysis is problematic, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (quoting Strickland, 466 U.S. at 689); see also Hunter v. Bowersox, 172 F.3d 1016, 1024 (8th Cir. 1999). Decisions involving trial strategy are therefore "virtually unchallengeable." Link v. Luebbers, 469 F.3d 1197, 1204 (8th Cir. 2006). "The Sixth Amendment right to counsel functions to ensure that defendants receive a fair trial, not a perfect one." Willis v. United States, 87 F.3d 1004, 1008 (8th Cir. 1996).

### C. Particular Grounds

#### 1. Ground One

Brown Thunder raises five separate arguments charging ineffective assistance of trial counsel. Brown Thunder's first ground contends that "a reasonable lawyer would have challenged the jury array and the composition of the petit jury." CIV Doc. 1 at 8. Brown Thunder's jury consisted of twelve females, only one of whom is a Native American. Brown Thunder appropriately couches his claim as an ineffective assistance of counsel claim; Brown Thunder's failure to raise a challenge to "discrimination in the jury selection process" is waived

9

if not raised on appeal and instead raised for the first time in a § 2255 motion. See Peltier v. United States, 867 F.2d 1125, 1126 (8th Cir. 1989). Moreover, this Court's jury selection process plan has been approved by the Eighth Circuit. See South Dakota's Plan for Random Selection of Grand and Petit Jurors (July 22, 2008), at III and V.A., available at http://www.sdd.uscourts.gov/jury-plan.

An all female jury in Brown Thunder's case resulted from a combination of factors, none of which establishes ineffective assistance of counsel. During voir dire, this Court excused five prospective male jurors for cause. CR Docs. 204, 276. Four of those men had unavoidable business or personal conflicts. CR Doc. 276 at 11–12, 15–16, 16–17, 63. The other man was excused for cause based on his familiarity with potential witnesses and his indication that it would be hard for him to be impartial. CR Doc. 276 at 30–38. Brown Thunder's counsel agreed, as did the Government's attorney, that this juror ought to be excused for cause. CR Doc. 276 at 37–38.

After both counsel had passed the prospective jurors for cause, at least nine and possibly ten men[5] remained among the prospective jurors. Brown Thunder's counsel used peremptory challenges on five prospective female jurors and on six prospective male jurors. CR Doc. 204. The record reveals reasons why Brown Thunder's counsel struck the six men. One prospective male juror disclosed that his own daughter had been raped; although this juror said that he could be fair nonetheless, defense counsel's exercise of a peremptory challenge as to this juror is understandable. CR Doc. 276 at 105–06. When asked by Brown Thunder's attorney if he believed that he could be a fair and impartial juror, another male juror answered with a somewhat equivocal "probably;" Brown Thunder's counsel exercised a peremptory challenge.

---

[5] One juror, L.B. has a first name that is gender neutral, although the spelling of the first name makes it probable that L.B. was a male.

CR Doc. 276 at 120–21. Three of the prospective male jurors struck by Brown Thunder's counsel knew Government's witness Dr. Jamie Liudahl. CR Doc. 276 at 41–42. One of those men also had played basketball with one of the FBI agents who testified and had a sister who worked for the United States Attorney's Office. CR Doc. 276 at 42, 83. Dr. Liudahl was an important witness in the case in that he testified not only about the vaginal laceration suffered by H.C., but also about the injury not being consistent with a straddle injury or fall and rather being caused by something being inserted into H.C.'s vagina consistent with a sexual assault. The last prospective male juror struck by Brown Thunder's counsel did not make any comments during voir dire.

Brown Thunder's counsel in his affidavit explained that "[t]he choice of which panel members to strike with peremptory challenges was a tactical decision." CIV Doc. 18 at 1. Tactical decisions of trial counsel are "virtually unchallengeable." Link, 469 F.3d at 1204. Brown Thunder's counsel also explained the absence of any basis for a challenge to the racial makeup of the jury or under Batson v. Kentucky, 476 U.S. 79 (1986). CIV Doc. 18 at 1–2. Brown Thunder cannot establish ineffective assistance of counsel during voir dire. His counsel's performance during voir dire was entirely appropriate. See CR Doc. 276 at 87–123.

Further, Brown Thunder cannot make a showing of prejudice from any alleged error of counsel during voir dire. See Wright v. Nix, 928 F.2d 270 (8th Cir. 1991). The jury considered the evidence appropriately in convicting on two counts and acquitting on two others, and the evidence of Brown Thunder's guilt on the two counts of conviction was convincingly strong.

### 2. Ground Two

Brown Thunder next argues that his "counsel did not object once he had information that one of the jurors had a prior connection to a sexual abuse case, allowing that juror to remain on

11

the jury." CIV Doc. 1 at 9. Brown Thunder's counsel in his affidavit does not know what Brown Thunder is referencing, but avers that "if I had any such knowledge and I allowed that person to remain on the jury without exercising a challenge, it was a tactical decision to keep the juror or because I did not want to waste a peremptory challenge on that particular juror." CIV Doc. 18 at 2. The Government does not know which juror Brown Thunder references, CIV Doc. 29 at 12, nor does Brown Thunder himself, CIV Doc. 32 at 3.

During voir dire, this Court questioned prospective jurors about whether they, family members, or close friends ever had been accused of committing or a victim of any sexual assault. CR Doc. 276 at 45, 53, 66. Prospective jurors who responded in the affirmative were questioned further, either privately at sidebar if the prospective juror preferred or openly if the prospective juror was comfortable proceeding in that manner. Those prospective jurors who said that they questioned their ability to be fair and impartial due to any past experience or familiarity with sexual assaults were excused for cause. Those prospective jurors who said that they could be fair and impartial and could set aside any past experience or familiarity with sexual assaults in determining if the Government proved beyond a reasonable doubt all elements of any offense were passed for cause. CR Doc. 276 at 45–62.

Brown Thunder's counsel on voir dire also asked about juror's experience with sexual assault claims, raising at sidebar with the Court that one juror had hired him previously to represent her son who was accused of inappropriately touching a student; this led to voir dire of the juror at sidebar. CR 276 at 89–92. Defense counsel's voir dire also led to further questioning of jurors at sidebar regarding experience with sexual assault allegations. CR Doc. 276 at 89–111.

Again, there was nothing inappropriate or ineffective with regard to how Brown Thunder's counsel handled voir dire. See CR Doc. 276 at 87–123. Likewise, as stated above, the jury appropriately considered the evidence in convicting Brown Thunder on two counts and acquitting him on two counts, and the evidence of Brown Thunder's guilt on the two counts of conviction was convincing and strong. There is no prejudice here from attorney Hanna's decision not to exercise a particular peremptory challenge as a tactical matter. See Wright, 928 F.2d 270; Link, 469 F.3d at 1204.

### 3. Ground Three

Brown Thunder's third claim for relief is that his "[c]ounsel did not check into a criminal justice sentence from a case in Worthington, Minnesota so that he could have objected at sentencing when the court asked the government if the warrant was still active." CIV Doc. 1 at 9. Brown Thunder's attorney objected to the portion of the presentence investigation report that deemed Brown Thunder to have been under a criminal justice sentence at the time he committed the crimes. CR Doc. 242 at 6–7. The Government at the sentencing hearing called as a witness the presentence investigation report writer, who testified about the warrant being outstanding when the crimes were committed and how that affected Brown Thunder's criminal history category. CR Doc. 242 at 7–8. Brown Thunder's counsel questioned the writer appropriately at the sentencing hearing. CR Doc. 242 at 8–11. In fact, Brown Thunder's sexual assault of H.C. occurred in March of 2008, and Brown Thunder in his filings in this case notes that the warrant, which was issued on June 21, 2006, for contempt of court, was quashed on July 30, 2009. CIV Doc. 2-2. Therefore, the warrant was outstanding at the time of the offense involving H.C., although not at the time Brown Thunder was sentenced in March of 2013.

This Court is in the unique position to know that the existence or non-existence of an outstanding warrant in Minnesota made no difference in the sentencing determination. The absence of a warrant and deeming commission of the offenses of conviction to have occurred while Brown Thunder was not under an existing sentence would have dropped Brown Thunder into criminal history category I under the United States Sentencing Commission's Guidelines Manual. Indeed, this Court discussed at the sentencing hearing how Brown Thunder's criminal history might be more appropriately viewed as criminal history category I. CR Doc. 242 at 53–54. However, Brown Thunder's offenses put him in total offense level 41. His guideline range if he were in criminal history category I would have been 324 to 405 months, as opposed to the 360 months to life calculated in the presentence investigation report. CR Doc. 242 at 30. This Court granted a downward departure at Brown Thunder's request to offense level 36 and took guidance from ranges of 210 to 262 months and 235 to 293 months for reasons this Court explained during the sentencing hearing. CR Doc. 242 at 54–55. This Court then arrived at a sentence of 240 months on the greater count of conviction as being what was sufficient but not more than necessary. CR Doc. 242 at 55. This Court would not have viewed the case as belonging in offense level 36 and Brown Thunder as deserving to be in criminal history category I unless this Court were to make the sentence for the offense against A.C. run consecutive or partially consecutive to the sentence on the offense against H.C. Otherwise, under this Court's analysis at the sentencing hearing, a treatment of the crime as total offense level 36 in criminal history category I would have excused and not punished Brown Thunder for the sex act against A.C. Brown Thunder can show no prejudice under the second prong of <u>Strickland</u>, 466 U.S. at 688, 692, 694, because the sentence would not have been any different if this Court had known the warrant from Minnesota to have been quashed on July 30, 2009.

Moreover, what Brown Thunder submitted into the record shows that the warrant was not quashed before and indeed was outstanding in March of 2008, when he sexually assaulted H.C. Thus, the presentence investigation report was correct in placing Brown Thunder in Criminal History Category II applying U.S.S.G. § 4A1.2(m) as to the offense against H.C.

### 4. Ground Four

In Ground Four of his § 2255 Petition, Brown Thunder claims that "[c]ounsel failed to investigate where Patrick Brown Thunder was living and working during 2005 and early 2006. Had counsel gotten this information[,] the jury would have found Brown Thunder not guilty for count one." CIV Doc. 1 at 10. Brown Thunder appropriately recognizes that his claim does not affect his conviction on the greater offense, on which he is serving the 240-month sentence.

Count I of the Indictment concerned the sexual intercourse with then-thirteen year old A.C. "on or about between the 23rd day of April, 2005, and the 22nd day of April, 2006." CR Doc. 110. Brown Thunder and his counsel discussed that Brown Thunder's living and working in Minnesota at the time was not a complete alibi, because Brown Thunder could have returned to his home in South Dakota on the Cheyenne River Indian Reservation during that year. CIV Doc. 18 at 3. Brown Thunder took the stand at his trial and testified that he was living in Minnesota at the time A.C. testified Brown Thunder had sex with her. CR Doc. 239-2 at 232–33 (Trial Transcript 730–31). Brown Thunder cannot satisfy the two prongs of Strickland to establish that counsel's failure to present more evidence of Brown Thunder being in Minnesota was either below an objective standard of reasonableness or prejudicial such that the results would have been different.

### 5. Ground Five

Brown Thunder's final ground for relief is that his counsel failed to get evidence to impeach A.C. and to show that the "car she claimed her and Brown Thunder were having sex in, in 2005–2006, was not purchased until 2008." CIV Doc. 1 at 10. Again, this claim has no impact on Brown Thunder's conviction of the greater offense of the sexual assault on H.C. Brown Thunder admitted that he owned the Lincoln sedan in March of 2008, and indeed that H.C. was in that very car on the night in question.

A.C. testified that when she was 13, Brown Thunder took her out in the country in his car to smoke marijuana and have sexual intercourse with her. CR Doc. 239 at 204–09, 217–18. In her direct testimony, A.C. did not specify what particular car Brown Thunder had at the time he had sexual intercourse with her. Brown Thunder's attorney appropriately and extensively cross-examined A.C. CR Doc. 239 at 221–43. Brown Thunder's counsel got A.C. to say that she thought that the car Brown Thunder had the night of H.C.'s sexual assault was the same one that Brown Thunder used for sex with A.C. CR Doc. 239 at 229. Brown Thunder himself testified that he never had sex with A.C. Brown Thunder did not testify at trial about when he acquired the Lincoln sedan, although in a written memorandum in the present case Brown Thunder claims that he acquired the car in February of 2008. CIV Doc. 2 at 19.

Even if Brown Thunder did not own the car in 2005 or 2006, there is no showing of prejudice under the second prong of Strickland. Brown Thunder owned the Lincoln sedan at the time of H.C.'s assault. The jury believed A.C. and not Brown Thunder regarding the sexual assault of A.C. in a car. Whether it was the same car as the one he owned in 2008 or a different car matters little; it remains the same criminal offense. This Court cannot conclude that evidence about Brown Thunder's lack of ownership of the Lincoln sedan in 2005 and 2006 would result in

a "reasonable probability that . . . the result of the proceeding would have been different." See Strickland, 466 U.S. at 694.

## III. Conclusion and Order

The motion, files, and records of the case conclusively show that Brown Thunder is not entitled to relief under 28 U.S.C. § 2255. Therefore, it is hereby

ORDERED that Brown Thunder's Motion to Vacate, Set Aside, or Correct Sentence, Doc. 1, is denied. It is further

ORDERED that the Government's Motion to Dismiss Petitioner's Motion, Doc. 28, is granted. It is further

ORDERED that judgment of dismissal and no issuance of a certificate of appealability shall enter.

DATED this 21st day of October, 2016.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE